THERESA WIWIROWSKI, as Administratrix, etc., Respondent, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, Appellant.

While want of contributory negligence, on the part of a person killed at a railroad crossing, may be established by inferences drawn from the circumstances, such an inference may not be drawn simply from a presumption that a person exposed to danger will exercise care and prudence in regard to his own safety.

In an action to recover damages for alleged negligence causing death, freedom of contributory negligence must be proved, and where the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a refusal to nonsuit is error.

The fact that another person who was in company with the deceased looked and listened, but did not hear or see the approaching train, does not establish that he would have failed also had he looked and listened.

In an action to recover damages for alleged negligence, causing the death of W., plaintiff's intestate, it appeared that W., while passing along a city street, in attempting to cross one of defendant's tracks, was struck and killed by the tender of a locomotive which was backing down on the track drawing a caboose. It was dark at the time, but quiet, and lights were burning in the cupola of the caboose; W. had crossed over three tracks before reaching the one where the accident occurred; some cars were standing on the first track which came within about twenty feet of the street. This track is about fifty feet distant from that on which W. was killed; the latter is straight for a long distance each way from the street. No evidence was given tending to show that W. looked or listened before reaching defendant's tracks; plaintiff, his wife, who was following closely behind him, testified that she looked and listened when she first approached the tracks, but saw no light or car approaching. *Held,* that the evidence failed to show want of contributory negligence; and that a refusal to nonsuit the plaintiff was error.

*Wiwirowski* v. *L. S. & M. S. R. Co.* (58 Hun, 40), reversed.

(Argued February 24, 1891; decided March 10, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and denied a motion for a new trial.

This action was brought to recover damages for alleged negligence causing the death of Dazydeury Wiwirowski, plaintiff's intestate.

The material facts are stated in the opinion.

*James F. Gluck* for appellant.     The plaintiff failed to establish a cause of action, and freedom from negligence on the part of the defendant was shown by a preponderance of evidence. (*Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330; *McDonald* v. *L. I. R. R. Co.*, 116 id. 546; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 id. 199; *Briknell* v. *N. Y. C. & H. R. R. R. Co.*, 120 id. 290.)

*Frank R. Perkins* for respondent.     The question of defendant's negligence was properly submitted to the jury. (*Merwin* v. *M. R. Co.*, 48 Hun, 609; *Daniels* v. *L. I. R. T. Co.*, 28 N. Y. S. R. 87; *Wall* v. *D. L. & W. R. R. Co.*, 28 id. 132.) It cannot be said that the fact that there was contributory negligence on the part of the plaintiff's intestate was proved so clearly that there was nothing for the jury to determine, and it became a question of law. (*Galvin* v. *New York*, 112 N. Y. 223; *Palmer* v. *Dearing*, 83 id. 7; *Howrney* v. *B. C. R. R. Co.*, 27 N. Y. S. R. 49; *Beckwith* v. *N. Y. C. & H. R. R. R. Co.*, 28 id. 130.) The question as to the intestate's being a trespasser on the defendant's tracks was properly submitted to the jury. (*Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; *Hackford* v. *N. Y. C. & H. R. R. R. Co.*, 53 id. 654; *Smith* v. *Carr*, 55 id. 678; *Heyne* v. *Blair*, 62 id. 19.) The intestate was not bound to see or hear the train, but in the exercise of reasonable care and prudence to look and listen.     This may be shown in various ways from the circumstances, or there may be such an inference of reasonable caution as will require a submission to the jury. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 68; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 422; *Sherry* v. *N. Y. C. & H. R. R. R. Co.*, 104 id. 652; *Hart* v. *H. R. B. Co.*, 80 id. 623; *Galvin* v. *City of New York*, 112 id. 228;

*Buhrens* v. *D. D. R. R. Co.*, 53 Hun, 572; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 500; *Woodward* v. *N. Y., L. E. & W. R. R. Co.*, 106 id. 369.) The general verdict for the plaintiff, by intendment of law, settled in favor of the prevailing party every question of fact litigated upon the trial, and the court will not intend that the jury found either of the issues in favor of the unsuccessful party for the purpose of overturning the verdict. ( *Wolf* v. *G. F. Ins. Co.*, 43 Barb. 405; *Van Pelt* v. *Otter*, 2 Sweeny, 206; *Rhodes* v. *Bunts*, 21 Wend. 19.) The question as to whether the bell was rung was litigated on the trial and properly submitted to the jury. (*Greany* v. *L. I. R. R. Co.*, 101 N. Y. 422; *Sipple* v. *State*, 99 id. 290; *Dean* v. *M. E. R. Co.*, 119 id. 550; *Kearney* v. *Mayor, etc.*, 92 id. 621.) There was sufficient evidence in the circumstances of the absence of any contributory negligence on the part of the plaintiff's intestate to require the submission of that question to the jury. (*Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 74; *Galvin* v. *Mayor, etc.*, 112 id. 228; *Palmer* v. *Dearing*, 93 id. 7; *Hoffman* v. *U. F. Co.*, 47 id.186; *McGovern* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 421; *Dolan* v. *D. & H. C. Co.*, 71 id. 228; *Blaiser* v. *N. Y., L. E. & W. R. R. Co.*, 17 N. Y. S. R. 145; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 33 id. 863; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 N. Y. 355.)

HAIGHT, J. On the evening of October 27, 1888, at about half-past six or seven o'clock, the plaintiff, with her husband and a neighbor named Jacobowski, were walking across the defendant's tracks along the southerly sidewalk of Oneida street in the city of Buffalo. They first approached the tracks of the New York Central railroad, three in number, which they passed in safety. They then entered upon the defendant's west-bound track, and whilst attempting to cross that the two men were struck by the tender of a locomotive and killed. The locomotive was backing into the city from East Buffalo, drawing a caboose. On the first of the Central tracks some cars were standing which came to within about twenty

feet of Oneida street. A passenger train had just passed east on the Central tracks, the rear lights of which were at Montgomery street, the next street east of Oneida street, as the defendant's engine passed that street. At the time of the accident it was dark, and there was a conflict in the evidence as to whether the usual signals were given, making the question of the defendant's negligence one for the jury.

The only question which we are called upon to consider pertains to the contributory negligence of the plaintiff's intestate. Upon this branch of the case the testimony given in support of the verdict was by the plaintiff, and is as follows: "The two men went ahead of me, and I went behind them. When we came to the railroad tracks I did not see any car or hear any noise. A car came along and killed my husband and the other man with him, and then I fell down and don't know what after that happened. We were on the sidewalk on Oneida street when the car hit them. I was about three feet behind the men at the time. I did not see any flagman or hear anyone call to me, nor hear any bell or whistle, or see any light. I saw the men after the car had passed over them. It was dark at that time." On her cross-examination she testified that "We went along quiet; we were not talking. Everything was quiet all around there; all the way in. Alongside the tracks were some cars, on which one of the tracks I can't exactly tell. My best recollection is they were on the first track we passed, about twenty feet back from Oneida street, and it was on the fourth track after we passed the first track that my husband was killed. We walked along on this space and down on the other side of these cars. We came right down across the tracks and my husband was struck on the fourth track." After the plaintiff had rested the defendant's counsel requested the court to direct a verdict upon the ground that the plaintiff had failed to make out a cause of action. The court reserved its decision and permitted the plaintiff to be again recalled to give further testimony. She was then asked how she knew that there were no lights, and answered that she noticed that there were none. And when asked how did she

notice it, answered "I looked at one side and the other, looked each way. I saw no light or any car. I didn't see any car coming." This was all of the evidence given on behalf of the plaintiff bearing upon the question. It will be observed that she says that she looked "when we came to the railroad tracks." From this we understand that she looked as they came to the first of the Central tracks. The defendant's track, upon which her husband was killed, was the fourth track, a distance of about fifty feet from the first of the Central tracks. It does not appear that she looked or listened after this time but followed along about three feet behind her husband and his companion until they were struck. At the place of the accident the tracks of the defendant were straight for a distance of 1850 feet east and 3200 feet west. No evidence was given tending to show whether the plaintiff's intestate looked or listened before entering upon the defendant's tracks.

The trial court appears to have been of the opinion that the testimony of the plaintiff as to the observations made by her were sufficient to excuse her husband from the exercise of the care and prudence that the law called for under such circumstances. If this were the rule it would hardly answer in this case, for her own statement does not show that she exercised vigilance or even ordinary care in the use of her eyes and ears in approaching the defendant's track. True, she looked both ways and saw nothing when she first approached the tracks, but had she again looked and listened after she had crossed the first two or three tracks she might have discovered the approach of the defendant's train. It was running at a speed of between four and five miles per hour. The lights in the cupola of the caboose were burning, and even though there was no light upon the rear of the tender, or bell sounded, she might have heard the tread of the train as well as have seen the approaching lights in the caboose.

But we do not understand that vigilance or care upon the part of the plaintiff relieved her husband from himself exer-cising care and prudence. The fact that she looked and saw nothing may be some evidence tending to show that he could

not have seen had he looked, provided his chances for observation were the same as hers. It does not, however, follow that because she failed to see and hear he would have failed also had he looked or listened. It is undisputed that after passing the first of the Central tracks there was nothing to obscure the vision, other than the darkness that prevailed, for a long distance, and there was nothing to obstruct the sound. She was walking closely behind the two men, within three feet. Their bodies to some extent might have obscured her vision as they were approaching the defendant's track. Their opportunity to see and hear was, therefore, better than hers. They were in a known place of danger, and had they exercised their senses under the circumstances it is at least probable that they would have both seen and heard the approaching train. Freedom from contributory negligence cannot be assumed. (*McDonald* v. *Long Island Railroad Co.*, 116 N. Y. 546–550 ; *Dobbins* v. *Brown*, 119 id. 188.)

The burden of showing that the plaintiff's intestate was free from contributory negligence rested upon the plaintiff. It is true that the want of negligence may be established from inferences which may be properly drawn from the surrounding facts and circumstances, as in the case of *Galvin* v. *Mayor*, *etc.* (112 N. Y. 223). But such inference cannot be drawn from a presumption that a person will exercise care and prudence in regard to his own life and safety, for the reason that human experience is to the effect that persons exposed to danger will frequently forego the ordinary precautions of safety. And when the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a nonsuit should be granted. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330. See also *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 id. 199 ; *Bond* v. *Smith*, 113 id. 378.)

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.